**William John WIRTH, Appellant,**

v.

**R. R. SURLES, Officer, State Highway Patrol, Appellee.**

No. 76–1597.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1977.

Decided Sept. 22, 1977.

Robert E. McCormack, Third Year Law Student (Michael E. Geltner, App. Litigation Clinic, Washington, D. C., on brief), for appellant.

H. Brent Fortson, Asst. Atty. Gen., Columbia, S. C. (Daniel R. McLeod, Atty. Gen., Treva G. Ashworth, Asst. Atty. Gen., Columbia, S. C., and Richard D. Bybee, Legal Asst., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

The plaintiff, William John Wirth, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 seeking damages from R. R. Surles, an officer of the South Carolina Highway Patrol, for allegedly taking Mr. Wirth into custody, forcibly removing him

from the State of Georgia and returning him to the State of South Carolina without first having Wirth extradited. The district court, *sua sponte*, dismissed the complaint holding that Surles' conduct was not actionable under 42 U.S.C. § 1983. We disagree, and we reverse and remand this case for further proceedings.

## I.

### FACTS

On February 18, 1974, the Allendale, South Carolina, Police Department issued an all-points bulletin for a suspect in the armed robbery of a local store. One hour after the robbery, two unidentified Georgia highway police officers arrested Mr. Wirth in the State of Georgia for the armed robbery. The two officers took Mr. Wirth to the Georgia welcome station. Officer R. R. Surles, of the South Carolina Highway Patrol, crossed into Georgia, took Mr. Wirth into custody, and transported him into South Carolina without any extradition proceedings. Mr. Wirth pleaded guilty to the charge of armed robbery and was sentenced.

## II.

### DISMISSAL OF PLAINTIFF'S § 1983 ACTION

■ A civil rights claim based on 42 U.S.C. § 1983 should not be dismissed for failure to state a claim upon which relief can be granted, unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969). Viewed in this context, there are two essential elements which must be proven by plaintiff in order to state a claim in a § 1983 suit. First, the conduct complained of must have been done by some person acting under color of law; and second, such conduct must have subjected the complainant to the deprivation of rights, privileges, or immunities secured to him by the Constitution and the laws of the

United States. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Johnson v. Mueller, supra* at 355.

### A.

### UNDER COLOR OF LAW

■ Because the district court found no deprivation of rights in this case, the issue of whether Officer Surles was acting under the color of law was not reached below. Nevertheless, this court concludes that when a highway patrolman crosses a state line to obtain custody of a suspect and returns the suspect without extradition to the state which the officer serves, he is acting under color of law. *Brzozowski v. Randall*, 281 F.Supp. 306, 311 (E.D.Pa.1968). This rule follows even when the challenged acts constitute an abuse of the authority conveyed upon an officer. *Scheuer v. Rhodes*, 416 U.S. 232, 243, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### B.

### DEPRIVATION OF RIGHTS

The central issue in this case is whether the plaintiff possessed any rights, privileges, or immunities secured to him by the Constitution and the laws of the United States which were infringed by his capture and removal to South Carolina without extradition proceedings.

The district court held that the plaintiff possessed no such right, privilege, or immunity, relying upon one line of authority which supports such a holding. *See, e. g., Hines v. Guthrey*, 342 F.Supp. 594 (W.D.Va. 1972); *Johnson v. Buie*, 312 F.Supp. 1349 (W.D.Mo.1970); *Crawford v. Lydick*, 179 F.Supp. 211 (W.D.Mich.1959). The rationale for these decisions is found in the following language of *Biddinger v. Commissioner*, 245 U.S. 128, 132–33, 38 S.Ct. 41, 42, 62 L.Ed. 193 (1917), which speaks to the purpose of the interstate extradition provision of the Constitution:

The language was not used to express the law of extradition as usually prevailing among independent nations but to pro-

vide a summary executive proceeding by the use of which the closely associated states of the Union could promptly aid one another in bringing to trial persons accused of crime by preventing their finding in one state an asylum against the processes of justice of another. . .

Such a provision was necessary to prevent the very general requirement of the state Constitutions that persons accused of crime shall be tried in the county or district in which the crime shall have been committed from becoming a shield for the guilty rather than a defense for the innocent, which it was intended to be. Its design was and is, in effect, to eliminate, for this purpose, the boundaries of states, so that each may reach out and bring to speedy trial offenders against its laws from any part of the land.

Such being the origin and purpose of these provisions of the Constitution and statutes, they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose  . . ..

From this language, several courts have found that "the constitutional provision for the interstate extradition of fugitives and the federal statutes enacted thereunder were designed to benefit the states, not to benefit fugitives." *E. g., Hines v. Guthrey,* 342 F.Supp. 594, 595 (W.D.Va.1972).

Although we recognize the limited nature of the extradition proceeding, this court does not believe that the fugitive possessed no rights which would conceivably give rise to an action under 42 U.S.C. § 1983. Accordingly, we specifically disagree with *Hines* insofar as it holds otherwise.

█ Before the governor of the asylum state releases a fugitive to the custody of the demanding state, he must make the following two findings:

*First,* that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the state making the demand; and, *second,* that the person

demanded is a fugitive from the justice of the state the executive authority of which makes the demand.

*Roberts v. Reilly,* 116 U.S. 80, 95, 6 S.Ct. 291, 299, 29 L.Ed. 544 (1885).

█ There can be no doubt that "the first of these prerequisites is a question of law, and is always open, upon the face of the papers, to judicial inquiry, on an application for a discharge under a writ of *habeas corpus.*" *Roberts, supra* at 95, 6 S.Ct. at 299. Therefore, in addition to the fact that "the [extradition] statute is one involving the substantial rights of citizens, and its essential elements must be strictly followed," *United States v. Meyering,* 75 F.2d 716, 717 (7th Cir. 1935), the rights are open to inquiry through habeas corpus. Simply stated, "[t]he alleged fugitive has a right not to be imprisoned or dealt with by the states in disregard of those safeguards provided by the Constitution and statutes of the United States." *Meyering, supra* at 717.

█ Additionally, the laws of Georgia provide the fugitive with many rights which are to be observed before extradition. *See* Ga. Code Ann. §§ 44–401 to 44–429 (1974). Under § 44–411, a fugitive is entitled to a hearing before a magistrate who must inform him of the demand made for his extradition, that he has a right to counsel, and that he has a right to test the legality of his arrest by petition for a writ of habeas corpus. A denial of these same rights was found by the tenth circuit to be actionable under 42 U.S.C. § 1983. *Sanders v. Conine,* 506 F.2d 530 (10th Cir. 1974). "The requirement that a person arrested as a fugitive be advised of his right to counsel and be taken before a court patently benefits the prisoner, not the state." *Sanders, supra* at 532, *citing Pierson v. Grant,* 357 F.Supp. 397, 398 (N.D.Iowa 1973). We find no merit in the argument that the violation of Georgia's extradition laws does not give rise to a § 1983 suit. Where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States, a cause of action is stated under 42 U.S.C. § 1983. *See Sanders*

*v. Conine,* 506 F.2d 530, 532 (10th Cir. 1974); *Pierson v. Grant,* 357 F.Supp. 397, 399 (N.D. Iowa 1973).

■ This court does not believe that law enforcement officials should simply ignore the clear mandates of state and federal extradition laws in the apprehension and transportation of fugitives. While recognizing that failure to comply with state or federal extradition laws does not constitute a defense to a criminal prosecution, *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), we nevertheless hold that a complaint alleging the arrest and transportation of a fugitive without extradition proceedings does create a cause of action pursuant to 42 U.S.C. § 1983. Settled authority supports this proposition, which we hold to be the better view. *Sanders v. Conine,* 506 F.2d 530 (10th Cir. 1974); *Picking v. Pennsylvania Railroad Company,* 151 F.2d 240 (3rd Cir. 1945); *Pierson v. Grant,* 357 F.Supp. 397 (N.D.Iowa 1973); *Brzozowski v. Randall,* 281 F.Supp. 306 (E.D.Pa.1968).

Finally, one unpublished opinion deserves commentary since it was cited by defense counsel as possibly controlling the present appeal. In *Mabery v. Garrison,* No. 77–1048 (4th Cir. Oct. 11, 1976), this court affirmed the denial of a cause of action pursuant to 42 U.S.C. § 1983 brought by a plaintiff who alleged a violation of the extradition laws. The New York application for custody was approved by the Governor of North Carolina, and the plaintiff, Mabery, was surrendered to the New York authorities. However, the plaintiff had previously begun a challenge of his impending extradition, petitioning the state court for a writ of habeas corpus and a temporary restraining order prohibiting his removal from the state prior to a hearing. On the day of Mabery's removal, Warden Garrison received a show cause order which had been entered that day by the state court, but Mabery was already en route to New York.

Mabery sought damages from the warden and from the New York district attorney. This court held that the district court properly dismissed the suit as to both plaintiffs, noting first, that the New York district attorney could not be served with process, and second, that it was mandatory for the North Carolina warden to surrender Mabery to New York authorities when the Governor of North Carolina approved New York's request for custody.

The dismissal of the suit as to the warden in the *Mabery* case reflects the good-faith defense which can be raised in a § 1983 suit.[1] *Pierson v. Ray,* 386 U.S. 547, 555–56, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

After this court approved the dismissal of the action in the *Mabery* case on the grounds outlined above, it discussed issues similar to those raised in the instant appeal. Because *Mabery* was decided on other grounds, the discussion of the similar issues in *Mabery* is not controlling here.

Accordingly, the case is reversed and remanded for further proceedings.

*REVERSED AND REMANDED.*

RUSSELL, Circuit Judge, dissenting:

I dissent from the majority opinion for the reasons stated in *Hines v. Guthrey* (W.D.Va.1972) 342 F.Supp. 594, and *United States ex rel. Bryant v. Shapp* (D.Del.1976) 423 F.Supp. 471.

I might add that the majority opinion cites in support of its conclusions *Pierson v. Grant* (N.D.Iowa 1973) 357 F.Supp. 397. However, on appeal the court of appeals did not, as I read the opinion,[1] affirm the portion of the district court's decision cited by the majority in support of its conclusion. On the contrary, the opinion of the appellate court merely recognizes the conflict in the decisions on the point.[2]

---

1. From the abbreviated record before this court, it is impossible to determine the availability of this good-faith defense. On remand, this defense, if applicable, and others, may be raised by the defendant, Surles.

1. *Pierson v. Grant* (8th Cir. 1975) 527 F.2d 161.

2. *See* Note 5 at 163 of 527 F.2d.