**John Joseph KELLER, Plaintiff,**

**v.**

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 92–767–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Jan. 6, 1993.

Earl P. Zack, Jr., Alexandria, VA, for plaintiff.

E. Louise R. Phillips, Asst. Corp. Counsel, Eleanor Louise Rhodes Phillips, Washington, DC, for District of Columbia.

Mitchell B. Weitzman, Robert E. Deso, Jr., Deso, Thomas & Rost P.C., Washington, DC, for Sheldon Hargrove.

## MEMORANDUM OPINION

ELLIS, District Judge.

This § 1983 action presents the threshold question whether police officers from one jurisdiction act "under color of" state law when they use the badges and instruments of their offices to arrest a citizen in another jurisdiction. Two of the defendants, both District of Columbia police officers, have moved to dismiss the complaint, arguing that § 1983 does not apply to their arrest of the plaintiff because the arrest occurred in Virginia, not in the District of Columbia, and accordingly, the officers did not have actual authority under state law to make the arrest. Because actions may be taken "under color of" state law even in the absence of actual authority under state law, defendants' motion to dismiss is denied.

### Facts [1]

On the afternoon of June 7, 1990, plaintiff John Joseph Keller was driving northbound on Interstate 395 in Arlington County, Virginia. At the same time, defendants Sheldon Hargrove and Jerald Brown, both officers in the District of Columbia Metropolitan Police Department, were also driving northbound on Interstate 395 in Arlington County, each operating marked Metropolitan Police Department cruisers. Keller pulled up behind Hargrove and Brown and flashed his lights to signal his desire to pass. After Keller passed Hargrove and Brown, the officers activated their emergency lights and signalled Keller to pull his vehicle to the side of the road. Keller complied. Then, he exited his vehicle, approached the officers, and asked why he had been stopped. In response, the officers demanded Keller's driver's license and

---

[1.] For purposes of evaluating a motion to dismiss, the facts as alleged in the complaint are taken as true. *See, e.g., International Union,* *United Mine Workers of America v. Covenant Coal Corp.,* 977 F.2d 895, 896 (4th Cir.1992).

ordered him back to his car. After waiting five minutes, Keller returned to the officers and again asked why he had been stopped. He also advised the officers that it was imperative for him to return promptly to his place of business because he was transporting urgently needed automobile parts. Again, he was offered no reason for the stop and again he was ordered back to his car. Keller returned to his car, waited two more minutes, and then approached the officers again, informing them again that he urgently needed to return to work. Once more he was ordered back to his car. After two more minutes, Keller went back to the officers and informed them that he was going to drive to his place of business. He told them the address of the business, told them they could retain his driver's license, and suggested that they follow him to his workplace where they could discuss the matter further.

At that point, Keller drove to his place of business. The officers followed Keller with their emergency lights activated.[2] When Keller reached his workplace and got out of his car, he was confronted by the officers who had drawn and pointed their weapons at him. Officer Brown stated, "Don't you move, you son of a bitch." The officers handcuffed Keller and pushed him onto the trunk of his car. Keller slid off the car and onto the ground and the officers repeatedly shoved him back onto the trunk of the car.

Soon after Keller was handcuffed, the Arlington County police arrived. After discussing the situation with Hargrove and Brown, the Arlington police ordered that Keller's handcuffs be removed. Thereafter, the Arlington police and Officer Hargrove went into a nearby convenience store to make a phone call, and Officer Brown again handcuffed Keller. When the Arlington police returned, they again ordered that the handcuffs be removed from Keller. Prior to departing, Hargrove and Brown told Keller that they would seek an arrest warrant for Keller in the District of Colum-

bia. No arrest warrant was ever issued for Keller.

Keller brings this action against Hargrove and Brown under 42 U.S.C. § 1983 for violation of his constitutional rights. Keller alleges that the actions of the officers caused him to suffer physical pain, mental anguish and humiliation, to be wrongfully deprived of his physical liberty, and to incur otherwise unnecessary medical and legal expenses. Keller also brings state law actions against Hargrove and Brown, and their employer, the District of Columbia, for assault and battery, false arrest, and intentional infliction of emotional distress. The matter comes before the Court on the motion of defendants Hargrove and Brown to dismiss the case, pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R.Civ.P., for lack of subject matter jurisdiction. Finding no merit in the defendants' argument, the Court denies the motion to dismiss.

### Analysis

Defendants argue that this Court lacks subject matter jurisdiction over this case because: (1) there is no federal question jurisdiction and (2) while there is diversity between the parties, the true extent of Keller's injury does not meet the jurisdictional $50,000 minimum amount in controversy requirement of 28 U.S.C. § 1332(a). Because the Court finds that there is federal question jurisdiction over this action, there is no need to reach defendants' amount in controversy argument.

Plaintiff brings his federal claims under 42 U.S.C. § 1983, which states, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

---

**2.** In their answer to the complaint, the police officers allege that, while in transit to his workplace, plaintiff attempted to evade the officers, dangerously swerving his vehicle in Officer Har-

grove's direction. Because this matter is before the Court under Rules 12(b)(1) and (6), Fed. R.Civ.P., it is unnecessary to consider whether this evasion attempt actually occurred.

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Defendants argue that § 1983 is not applicable to their conduct because, at all relevant times, they were operating outside the jurisdiction in which they had legitimate authority. There is no dispute that Hargrove and Brown were both District of Columbia police officers or that the incident in question occurred entirely within the Commonwealth of Virginia. In essence, defendants contend that because they had no actual authority in Virginia, they cannot, as a matter of law, be found to have acted "under color of" state law by arresting Keller there.

■ In advancing this argument, defendants fail to recognize that action taken "under color of" state law is a potentially broader category than action taken under authority actually conferred by state law. The term "under color of" state law includes not only legitimate exercises of power, but also "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law...." *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Thus, as the Supreme Court held in *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945), "under 'color' of law means under 'pretense' of law...." Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority *or overstep it.*" (emphasis added).[3] As defendants point out, however, Supreme Court precedent also holds that "acts of officers in the ambit of their personal pursuits are plainly excluded [from liability under § 1983]." *Id.* Consequently, resolution of this case depends on whether Hargrove's and Brown's alleged conduct in stopping and arresting plaintiff is classified as a "personal pursuit" or as an "overstep" in

the exercise of the officers' legitimate authority.

Plaintiff relies primarily on the case of *Wirth v. Surles*, 562 F.2d 319 (4th Cir. 1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978), to support his argument that the facts that he has alleged in his complaint support liability under § 1983. In *Wirth*, a South Carolina police department had issued an all-points bulletin for a suspect in the armed robbery of a local store. One hour after the robbery, two Georgia highway police officers arrested Wirth in the state of Georgia for the armed robbery. The defendant, Officer R. R. Surles of the South Carolina Highway Patrol, crossed into Georgia, took Wirth into custody, and transported him into South Carolina without any extradition proceedings. Reversing the district court's dismissal of Wirth's § 1983 action against Surles, the Fourth Circuit held that Officer Surles was acting "under color of" state law, even though he was operating in a jurisdiction in which he had no actual authority. *Id.* at 321. The court further held that, under these circumstances, an officer is acting "under color of" state law even when the officer's actions "constitute an abuse of the authority conveyed upon [the] officer." *Id.*

■ Defendants acknowledge that *Wirth* is potentially damaging to their position, but they seek to distinguish *Wirth* on the ground that the officer in that case was clearly seeking to carry out his duty, while in the present case, there is no possibility that the officers could have believed that their actions were in furtherance of their legitimate responsibilities. This distinction is unpersuasive. Neither reason nor precedent supports the argument that the "under color of" law determination should turn on the subjective understanding of the actor concerning the scope of his duties. To the contrary, the law is clear that the inquiry should be directed at "the nature of the act performed." *Revene v. Charles Coun-*

---

**3.** Although the *Classic* and *Screws* decisions interpreted the "under color of" state law language in connection with a statute other than § 1983, the Supreme Court subsequently adopted the reasoning of those cases in the

context of § 1983. *See Monroe v. Pape,* 365 U.S. 167, 184–87, 81 S.Ct. 473, 482–84, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

*ty Commissioners,* 882 F.2d 870, 872 (4th Cir.1989). Here, the nature of the act performed is redolent with the aroma of state action. The traffic stop of a motorist, the use of firearms in effecting an arrest, and the ensuing physical restraint, including handcuffing, of an individual are quintessential police actions, made possible for the defendants only by reason of the fact that they were " 'clothed with the State's power.' " *Screws,* 325 U.S. at 110, 65 S.Ct. at 1039, *quoting Ex parte Commonwealth of Virginia,* 100 U.S. 339, 347, 25 L.Ed. 676 (1867).

■ While the absence of outward indicia of state authority, such as a police uniform, badge, and patrol car, does not necessarily negate a police officer's ability to act "under color of" state law, *Revene,* 882 F.2d at 872, the presence of such factors naturally imbues an officer's actions with an aura of authority not possessed by an ordinary citizen engaged in the same activity. Almost certainly, plaintiff would not have stopped his car and then remained, following orders, simply at the behest of an ordinary citizen. That plaintiff reasonably felt compelled to obey the directions of the police officers is strong evidence, in and of itself, that the conduct of the officers constituted an exercise of authority "under color of" state law.

Defendants cite *Robinson v. Davis,* 447 F.2d 753 (4th Cir.1971), *cert. denied,* 405 U.S. 979, 92 S.Ct. 1204, 31 L.Ed.2d 254 (1972), for the proposition that the outward appearance of state authority, such as the wearing of a police uniform, is not determinative of whether an individual acts "under color of" state law. In *Robinson,* however, the court was faced with a defendant who was not an employee of the state but was instead a private security guard who had been equipped, by a municipality, with a police uniform. The analysis in the *Robinson* decision centered on whether there had been the requisite § 1983 "state action" where the actor was employed by a private entity rather than the state. In the present case, by contrast, Officers Hargrove and Brown were indisputably employees of the District of Columbia and, thus, there is a stronger basis for imputing to the District of Columbia liability for their actions.[4] Where courts must determine whether an employee of the state is acting "under color of" state law, outward display of the indicia of state authority may be sufficient to meet the standard of § 1983.[5]

The actions allegedly taken by the defendant police officers in this case were made possible, at least in part, by the outward indicia of authority that the officers possessed by reason of their state employment. When confronted with such indicia of authority, an individual should not be forced to conduct a split-second analysis of whether the state official has jurisdiction to undertake the offending act. Implicit in defendant's argument is that the proper course for Keller to have taken under these circumstances would have been to defy the defendants and ignore their orders because they had no legitimate authority to conduct an arrest. This strains credulity, especially in light of defendants' drawn, loaded weapons.

Congress has chosen to deter unconstitutional exercises of police authority, such as that alleged in the instant case, by making such conduct subject to monetary liability under § 1983. When a police officer, in arresting a person, deprives that person of

---

4. In *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982), the Court held that the "under color of state law" requirement and the "state action" test were identical. The chief distinguishing characteristic between *Robinson* and the instant case is *not* that a different legal standard is applicable, but rather the fact that Officers Hargrove and Brown were state employees, thereby making it easier to prove that the actions in which they engaged were actions taken "under color of" state law.

5. *Robinson* is further distinguishable from the instant case as that court found that the plaintiffs "were cognizant that [the defendants] ... were acting in their part-time capacities as [private] security officers." 447 F.2d at 758. In the instant case, the fact that the plaintiff heeded the directions of the officers to stop his car and remain at the scene, despite his pressing need to return to work, indicates that the plaintiff was not cognizant that the officers were operating without lawful authority granted by the state.

constitutional rights, § 1983 liability cannot be made to depend on whether the officer actually had the authority to arrest that individual. It is the nature of the act that triggers liability, not the location of the victim. Making an arrest, by means of a marked police car, a police uniform and badge, and a state-issued firearm, is an act performed "under color of" state law, regardless of whether the state official has the actual jurisdiction to make an arrest.

For the foregoing reasons, plaintiff has properly alleged an action under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is proper in this Court, and defendants' motion to dismiss for lack of jurisdiction must be denied. An appropriate Order has issued.