PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LUCINDA LANGDON BATTEN; BRITTANY
ROSE LANGDON, a minor, by and
through her guardian ad litem, Cynthia
A. Singletary,

*Plaintiffs-Appellants,*

v.

STEVEN GOMEZ, in his official and
individual capacities as a Senior
Investigator for the District Attorney
of Riverside County, California;
SANDRA SHUSTER, in her official and
individual capacities as Senior
Investigator for the District Attorney
of Riverside County, California,

*Defendants-Appellees,*

and

LEE GUY, in his official and individual
capacities as Deputy Sheriff of Bladen
County, North Carolina; LARRY
GUYTON, in his official and individual
capacities as an Investigator for the
Sheriff's Department in Bladen
County, North Carolina; STEVE LESANE,
in his official and individual capacities
as Deputy Sheriff of Bladen County,
North Carolina; NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA; THE INSURANCE
COMPANY OF NORTH AMERICA,

*Defendants.*

No. 02-1087

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CA-99-198-7-F)

Argued: December 6, 2002

Decided: February 24, 2003

Before LUTTIG and TRAXLER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Hamilton wrote the opinion, in
which Judge Luttig and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** Richard Brooks Glazier, BEAVER, HOLT, STERN-
LICHT, GLAZIER, CARLIN, BRITTON & COURIE, P.A., Fayette-
ville, North Carolina, for Appellants. Andrew John Hanley,
CROSSLEY, MCINTOSH, PRIOR & COLLIER, Wilmington, North
Carolina, for Appellees. **ON BRIEF:** H. Gerald Beaver, BEAVER,
HOLT, STERNLICHT, GLAZIER, CARLIN, BRITTON & COU-
RIE, P.A., Fayetteville, North Carolina, for Appellants.

---

## OPINION

HAMILTON, Senior Circuit Judge:

On September 7, 1999, the plaintiffs, Lucinda Langdon Batten
(Batten) and her daughter, Brittany Rose Langdon (Brittany), by and
through her guardian *ad litem* (Cynthia Singletary), brought this
action against three deputies with the Bladen County, North Carolina
Sheriff's Department (Lee Guy, Larry Guyton, and Steven Lesane)
and two investigators with the Office of the District Attorney of Riv-

erside County, California (Sandra Shuster and Steven Gomez). In their complaint, the plaintiffs alleged multiple civil rights claims pursuant to 42 U.S.C. § 1983, as well as a series of North Carolina state law claims. After the plaintiffs settled their claims with the North Carolina defendants, Shuster and Gomez, pursuant to Federal Rule of Civil Procedure 56, moved for summary judgment alleging, *inter alia*, that they were immune from suit under the doctrine of qualified immunity. On December 21, 2001, the district court granted Shuster and Gomez's motion for summary judgment, holding that Shuster and Gomez were entitled to qualified immunity on the plaintiffs' § 1983 claims. In its order, the district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. The plaintiffs appeal, and we now affirm.

I

Batten was born and raised in Bladen County, North Carolina. In the mid-1980s, she moved to Florida with her second husband, Michael Batten, who fathered her child, Joanna, in 1987. Michael Batten allegedly beat and abused Batten and, in 1988, she moved to South Carolina with Joanna. At some point while living in South Carolina, Batten began to date Timothy Soulis (Soulis), Brittany's father.

Soulis abducted Batten at gun point in 1989 and, thereafter, they (without Joanna) began a one to two-year journey through Canada and Arizona that ended in California near some of Soulis's relatives. Although Soulis often held a job and worked away from the various apartments in which they were staying, Batten was afraid to escape or call the police or her relatives because she thought Soulis was acting on behalf of Michael Batten to deprive her of the custody and the companionship of Joanna. During this time, Michael Batten filed a custody proceeding in Florida and was granted sole custody of Joanna.

Brittany was born to Batten and Soulis on July 10, 1990 in a hospital in Orange County, California, while they were living in Riverside County, California. Soulis was acknowledged on the birth certificate as Brittany's father. In November 1990, Batten left with Brittany for Bladen County, North Carolina after a friend, Paul Smith (Smith),

arranged to leave a ticket for her at the airport. Batten fled because Soulis allegedly beat and threatened her on numerous occasions.

Soulis promptly filed charges of child abduction against Batten and instituted civil proceedings to enforce his rights as a parent under California law. In July 1991, the Municipal Court of Riverside County issued a felony warrant for Batten's arrest for child abduction. On July 22, 1991, the Superior Court of Riverside County issued a California Family Code Section 4604 order (the 4604 Order) directing the District Attorney of Riverside County to "take all actions necessary to locate" Batten and Brittany and "to return" Brittany to the court's jurisdiction. (J.A. 552).[1]

After returning to Bladen County, North Carolina, Batten began to date and live with Smith. At some point in late 1996, Batten caught Deputy Lee Guy's brother, Donnie Guy, peeping in one of the windows of her home. Batten subsequently caught Donnie Guy peeping in her window a second time, called 911, and filed a criminal misdemeanor charge against him. Donnie Guy's trial on this misdemeanor charge was scheduled for January 27, 1997.

Thereafter, Deputy Lee Guy ran a criminal records search on Batten and discovered the outstanding California felony arrest warrant and the 4604 Order. Once he learned of the felony arrest warrant and the 4604 Order, Deputy Lee Guy called the Riverside County District Attorney's Office and notified the office that he had found Batten and

---

[1]Section 4604 provides in relevant part:

> In any case where a petition to determine custody of a child has been filed in a court of competent jurisdiction, or where a temporary order pending determination of custody has been entered in accordance with Section 4600.1, and the whereabouts of a party in possession of the child are not known, or there is a reason to believe that such party may not appear although ordered to appear personally with the child pursuant to Section 5160, the district attorney shall take all actions necessary to locate such party and the child and to procure compliance with the order to appear with the child for the purposes of adjudication of custody.

Cal. Fam. Code § 4604(a).

made arrangements to coordinate the execution of the felony arrest warrant and 4604 Order.

Sandra Shuster (Shuster) and Steven Gomez (Gomez) are investigators with the District Attorney of Riverside County, California. After being contacted by Deputy Lee Guy in January 1997, Shuster confirmed with the California courts that the 4604 Order and felony arrest warrant were still in effect and made arrangements to go to North Carolina on January 23, 1997 to pick up Brittany. Prior to leaving for North Carolina, Shuster called the Riverside County Superior Court to ask for an immediate hearing once the court's 4604 Order was executed. The Riverside County Superior Court agreed to hold an immediate hearing after the 4604 Order was executed.

Prior to arriving in North Carolina, Shuster faxed the 4604 Order to Bladen County and upon arrival asked the Sheriff's Department if she needed to do anything in connection with the order such as filing a North Carolina action or having the order countersigned (domesticated) by a North Carolina judge. Shuster and Gomez followed a similar process in every out-of-state abduction case; they present the 4604 Order to local law enforcement and ask if there is anything else that needs to be done such as filing or domesticating the order. If they are informed that the 4604 Order needs to be domesticated, they will take the necessary steps to domesticate the order.

Shuster presented the paperwork to the Bladen County Sheriff's Department and asked if the paperwork was in order. The contact at the Bladen County Sheriff's Department, Deputy Larry Guyton (Deputy Guyton), reviewed the paperwork and allegedly showed it to the local District Attorney who informed him that the paperwork was in order and that they could seize the child. According to Deputy Guyton, the District Attorney informed him that the orders were valid in North Carolina and Deputy Guyton conveyed this information to Shuster and Gomez.[2]

---

[2]In his affidavit, the then District Attorney for Bladen County, Marion Warren (now Judge Warren), states that he has no recollection of the alleged meeting he had with Deputy Guyton and no recollection of seeing the 4604 Order.

Shuster, accompanied by Deputy Steven Lesane (Deputy Lesane), picked up Brittany at her school. Gomez, accompanied by Deputy Guyton, met Batten at her place of employment. Gomez and Deputy Guyton explained that they had an order to pick up her child and a warrant to arrest her for child abduction. She was offered a choice of facing extradition or waiving extradition and voluntarily returning with the California investigators and Brittany to court in California. Batten agreed to accompany the California investigators and Brittany to California. Batten was allowed to leave work and return home unaccompanied to pack some clothes for her and her daughter. Once at home, she contacted her attorney. Thereafter, she met Shuster, Gomez, and Brittany at the airport.

In California, Batten was taken before a magistrate, released on her own recognizance, and placed in a hotel room at state expense.[3] The plaintiffs concede that the Riverside County Superior Court held prompt hearings and awarded temporary custody of Brittany to Soulis.[4] Thereafter, Soulis took temporary custody of Brittany, but at the custody hearing on February 18, 1998, the Riverside County Superior Court held that North Carolina was the proper jurisdiction to decide the question of custody. Following custody proceedings in Bladen County, North Carolina, Batten was awarded custody of Brittany.

On September 7, 1999, the plaintiffs brought this § 1983 action against Deputy Lee Guy, Deputy Guyton, Deputy Lesane, Shuster, and Gomez. The plaintiffs alleged multiple civil rights claims pursuant to 42 U.S.C. § 1983, as well as a series of North Carolina state law claims.

In May 2001, the North Carolina defendants settled their claims with the plaintiffs for $75,000. After the conclusion of discovery, Shuster and Gomez filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, alleging, *inter alia*, that they were immune from suit under the doctrine of qualified immunity. On December 21, 2001, the district court granted Shuster and Gomez's

---

[3]As a result of her presence in California, the case against Donnie Guy was dismissed.

[4]On May 12, 1997, the child abduction charge against Batten was dismissed.

motion with regard to the § 1983 claims. In its order, the district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. This appeal followed.

## II

Entitlement to qualified immunity must be analyzed in two steps, which are to be "considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). As a "threshold question," a court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." *Id.* at 201. If the answer is no, then the analysis ends; the plaintiff cannot prevail. *Id.* If the answer is yes, then "the next, sequential step is to ask whether the right was clearly established" at the time of the events at issue. *Id.* This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id.* If the right was not "clearly established" in the "specific context of the case"—that is, if it was not "clear to a reasonable officer" that the conduct in which he allegedly engaged "was unlawful in the situation he confronted"—then the law affords immunity from suit. *Id.* at 201-02. Accordingly, the answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a defendant police officer's motion for summary judgment on qualified immunity grounds.

## A

Batten claims that her constitutional rights were violated because Shuster and Gomez failed to comply with North Carolina's extradition laws before transporting her to California. More specifically, Batten complains that, before transporting her to California, she was not informed of her extradition rights and was not afforded an extradition hearing.

To state a 42 U.S.C. § 1983 claim for illegal extradition, an individual must show that the violation of the state's extradition laws "cause[d] the deprivation of rights protected by the Constitution and statutes of the United States." *Wirth v. Surles*, 562 F.2d 319, 322 (4th Cir. 1977) (arrest and transportation of alleged fugitive without extradition proceedings does not constitute defense to criminal prosecution

but does create cause of action pursuant to § 1983). In this case, Batten's § 1983 illegal extradition claim fails for the simple reason that there was no violation of North Carolina's extradition laws.

The North Carolina Uniform Criminal Extradition Act (NCUCEA), N.C. Gen. Stat. §§ 15A-721-750, sets up a series of detailed procedures that must be followed by a state demanding the extradition of a person charged with a crime in the state demanding extradition. Under the NCUCEA, an extradition request must be made in writing to the Governor. *Id.* § 15A-723. The request must include a supporting affidavit charging the defendant with the crime and a copy of the charge must be attached to the request, *id.*, and, if the defendant has not been arrested, the Governor must sign an arrest warrant for the defendant, *id.* § 15A-727.[5] A defendant must be notified of her rights when arrested to contest extradition and must be informed of the nature of the charges against her and her right to counsel. *Id.* § 15A-730. The NCUCEA, however, permits a person who learns of criminal charges against her in another state to elect to travel voluntarily to that state to face the charges. *Id.* § 15A-746 ("[N]othing in this section shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights or duties of the officers of the demanding state or of this State.").

In this case, Batten was given an option, she could either voluntarily accompany Shuster and Gomez to California or she could be arrested by Bladen County and held in jail pending formal extradition. Batten, after privately conferring with her attorney, voluntarily accompanied Shuster and Gomez to California. Simply put, Batten knowingly and voluntarily chose to waive her extradition rights and go to California. Under such circumstances, we see no constitutional

---

[5]Under the NCUCEA, a North Carolina arrest warrant was not required to arrest Batten pursuant to the felony arrest warrant for child abduction. N.C. Gen. Stat. § 15A-734 ("The arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant, upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment exceeding one year.").

infirmity. *Cf. Pierson v. Grant*, 527 F.2d 161, 164-65 (8th Cir. 1975) (holding that waiver of extradition rights is voluntary as long as the alleged fugitive had a general knowledge and understanding of what was involved in the waiver when he signed it); *Morrison v. Stepanski*, 839 F. Supp. 1130, 1140 (M.D. Pa. 1993) (holding that waiver of extradition rights must be "knowing" in the sense that the alleged fugitive understands that he has certain rights under the law and affirmatively indicates an intention to relinquish those rights and "voluntary" in the sense that it was given with the alleged fugitive's free choice). Accordingly, the district court did not err when it granted summary judgment in favor of Shuster and Gomez on Batten's § 1983 illegal extradition claim.

B

Batten also claims that the seizure of Brittany deprived her of her liberty interest, protected by the Due Process Clause of the Fourteenth Amendment, in the companionship, care, custody, and control of her child.

Indisputably, the seizure of Brittany constitutes an interference with Batten's liberty interest and thus triggers the procedural protections of the Due Process Clause of the Fourteenth Amendment. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981); *Jordan by Jordan v. Jackson*, 15 F.3d 333, 342 (4th Cir. 1994). To meet the requirements of due process, the state must afford notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Generally, absent exigent circumstances, due process requires a hearing before state officials may remove a child from her home. *Jordan by Jordan*, 15 F.3d at 343; *see also Morrell v. Mock*, 270 F.3d 1090, 1095 (7th Cir. 2001), *cert. denied*, 123 S. Ct. 71 (2002). Moreover, if exigent circumstances are present, there must be prompt "adequate post-deprivation process to ratify the emergency action." *Jordan by Jordan*, 15 F.3d at 343. Finally, due process requires "pre-enforcement notice and some opportunity to object before law enforcement officials may separate a parent from her child pursuant to an out-of-state" order. *Morrell*, 270 F.3d at 1097-1100 (holding that, after balancing the nature of each parent's liberty interest in their relationship with the child, the risk of harm from erroneous deprivations, and the gov-

ernment's interests in facilitating interstate recognition and enforcement of child custody decrees and in deterring the unilateral removal of children through the Uniform Child Custody Jurisdiction Act, due process requires "pre-enforcement notice and some opportunity to object before law enforcement officials may separate a parent from her child pursuant to an out-of-state default order transferring custody").

In this case, Shuster and Gomez do not contend, nor could they, that there were exigent circumstances that justified the seizure of Brittany without notice and a hearing. Furthermore, Shuster and Gomez concede that there was no pre-enforcement notice and no opportunity to object before Brittany's seizure pursuant to the 4604 order. Under these circumstances, we are satisfied that Batten has stated a claim for a deprivation, without due process, of her liberty interest in not being separated from Brittany without prior notice to her in North Carolina and without exigent circumstances.

We conclude, however, that Shuster and Gomez are entitled to qualified immunity on Batten's claim that the seizure of Brittany deprived Batten of her liberty interest, protected by the Due Process Clause of the Fourteenth Amendment, in the companionship, care, custody, and control of her child. In assessing whether the right at issue was clearly established at the time of the state official's actions, we focus upon "the right [not] at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (citation and internal quotation marks omitted); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). This does not mean, however, that a state official will be protected by qualified immunity unless the very act in question has previously been held unlawful. *Anderson*, 483 U.S. at 640. Rather, the unlawfulness must be apparent in light of pre-existing law. *Id.*

The gist of Batten's argument is that it was clearly established that due process required notice and an opportunity to be heard before a state official could interfere with a mother's liberty interest in her child. The statement of the right at this level of generality, however,

is of little help in determining the reasonableness of Shuster and Gomez's conduct. *Id.* at 639-40. As the court in *Morrell* explained, "[t]he appropriate question is whether it would be clear to reasonable officials in the defendants' position that enforcing the [out-of-state] order without prior notice or an opportunity to be heard in [the home state] was unconstitutional." 270 F.3d at 1100.

In this case, aside from *Morrell*, we have been unable to find any authoritative cases considering analogous circumstances that hold that pre-deprivation notice and an opportunity to be heard is required as a matter of constitutional due process before a state may enforce another state's order directing that a child be brought before the out-of-state court. Because *Morrell* was decided after Shuster and Gomez's actions in this case, Shuster and Gomez, like the defendants in *Morrell*, are immune from suit under the law of qualified immunity.[6]

## III

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*

---

[6]The plaintiffs contend that Brittany was unconstitutionally seized and transported to California in violation of her Fourth and Fourteenth Amendment rights. We have reviewed this claim and agree with the district court that Shuster and Gomez are entitled to qualified immunity on this claim because Shuster and Gomez violated no clearly established right held by Brittany.