**UNITED STATES of America,**

v.

**Ronald Cortez FOREMAN, Defendant.**

**No. CR.A. 2:02CR210.**

United States District Court,
E.D. Virginia,
Norfolk Division.

June 6, 2003.

Laura M. Everhart, Assistant United States Attorney, Norfolk, VA, for USA.

Walter B. Dalton, Assistant Federal Public Defender, Norfolk, VA, for Defendant.

### *OPINION AND ORDER*

SMITH, District Judge.

This matter is before the court on the government's motion for reconsideration of this court's April 1, 2003, ruling on defendant's motion to suppress. For the reasons stated below, the government's motion is **DENIED.**

On January 16, 2003, this court heard arguments on a motion to suppress evidence obtained during a search of defendant's vehicle subsequent to a traffic stop. Both parties were given the opportunity to submit additional authorities by January 22, 2003. The court held a second hearing on April 1, 2003, at which time the court ruled from the bench, granting defendant's motion to suppress.

■ In ruling from the bench, the court made the following findings. The initial traffic stop of Foreman was lawful under *United States v. Hassan El,* 5 F.3d 726 (4th Cir.1993)[1] as Trooper Wade had objective reasons for executing the stop.

---

**1.** In *Hassan El,* the Fourth Circuit ruled that the appropriate test is an objective one: the stop is valid as long as the officer had an objective right to stop the vehicle. 5 F.3d at 730–31.

Foreman was speeding, and there were windshield obstructions in violation of the Virginia Code. As the court explained, *United States v. Rusher* sets the parameters of a proper traffic stop: an individual can be detained long enough to check his license and registration, and he must then be allowed to leave unless there is reasonable suspicion of another crime to justify further detention. 966 F.2d 868, 876–77 (4th Cir.1992). Trooper Wade checked Foreman's license and registration, asked him a few questions, and then ended the detention for the stop. As Trooper Wade testified on the stand, Foreman knew he was free to go. (Tr. of Jan. 16, 2003, at 35–36.) At this point, the initial detention of Foreman for the traffic stop ended. Trooper Wade then began questioning Foreman again as Foreman returned to his vehicle. Therefore, a second encounter began, and it was during that second encounter that Trooper Wade had the drug dog sniff Foreman's vehicle. Thus, the court had to determine whether that second encounter was consensual, or whether there was reasonable suspicion for the detention of Foreman necessary to perform the dog sniff.

■■■ The Supreme Court has ruled that a dog sniff is not a search implicating the Fourth Amendment. *United States v. Place,* 462 U.S. 696, 706–07, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, in order to perform the sniff, there must be a seizure of the vehicle, and, therefore, the person, requiring either a consent to be detained or reasonable suspicion for the detention. *United States v. McFarley,* 991 F.2d 1188, 1191 (4th Cir.1993) (citing *Unit-*

*ed States v. Place,* 462 U.S. 696, 700–01, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). In the matter at hand, the dog sniff was not a part of the initial traffic stop—Trooper Wade testified that the stop had ended and Foreman was free to go. Nor was the dog sniff the product of a consent on the part of Foreman to be detained. The court found that, despite Trooper Wade's testimony on the matter, Foreman did not nod in agreement to the dog sniff. Moreover, this second encounter was not consensual, because a reasonable person in defendant's situation would not have felt free to leave.[2] Therefore, the only way that the second detention of Foreman could be justified was if Trooper Wade had reasonable suspicion for the second detention.

In its motion to reconsider, the government argues that the court failed to consider the totality of circumstances when it ruled that the factors constituting reasonable suspicion were insufficient to justify the second detention of Foreman. This argument is not correct. The court found that Trooper Wade stopped Foreman lawfully, that he conducted the traffic check and gave Foreman a warning, and that he then released Foreman, ending the stop. All of the factors cited by the government and testified to by Trooper Wade as constituting reasonable suspicion for a second detention occurred before the end of the traffic stop, i.e., the first detention. Yet, Trooper Wade let Foreman go. The court found that because Trooper Wade ended the initial encounter without acting on any reasonable suspicion he might have had, those factors could not be used to justify a second detention of Foreman.[3]

---

**2.** Foreman was on his way back to his vehicle when Trooper Wade started asking him new questions about drug couriers on Route 13, to which Foreman said he had no knowledge and proceeded toward his vehicle. Trooper Wade persisted and said he would have a dog sniff the vehicle. The only alternative to the dog sniff was to ignore the officer and drive

away, thereby facing pursuit and possible charges. Basically, Foreman had no choice.

**3.** The court notes that there were discrepancies in the factors proffered as reasonable suspicion which led to questions of credibility. There were differences between Trooper Wade's testimony on the stand and the report

■ The government cites three unpublished Fourth Circuit cases in arguing, essentially, that the completion of a stop does not end the use of reasonable suspicion garnered therein. First, these cases are unpublished, and, as such, are not binding precedent. Second, unpublished cases frequently do not contain recitations of the facts and the court's analysis of the law. They do not contain these elements because they were not intended to be relied upon as authority. Such is the case with *United States v. Soloman*, which offers no description of the facts surrounding the stop or of the events leading up to the dog sniff. 40 Fed.Appx. 772, 772–73, 2002 WL 1473486 (4th Cir.2002). All that can be taken from this case is that the Fourth Circuit found that after the defendant refused consent to search his vehicle, the detention of the defendant to conduct the dog sniff was a seizure implicating the Fourth Amendment. *Id.* Third, and finally, the two remaining cases cited by the government can be distinguished on the facts.

■ In *United States v. Strachan*, the encounter after the traffic stop was consensual; the Fourth Circuit specifically stated that "Strachan was not seized when the drug dog sniffed the car." 5 Fed. Appx. 169, 172–73, 2001 WL 208470 (4th Cir.2001). In the matter at hand, Foreman was seized when the dog sniff was conducted. Foreman did not consent to being further detained when the traffic stop ended. He had denied the request to conduct a physical search of the car, and the court found that there was insufficient evidence to support the allegation that Foreman nodded his head and assented to Trooper Wade's deployment of the dog.[4] Neither was the encounter consensual under the definition provided in *Rusher.* 966 F.2d at 876–77. Trooper Wade initiated a second encounter with Foreman, who felt obligated to respond rather than continue walking away. An encounter is consensual if "a reasonable person would have felt free to decline the officer's request or otherwise terminate the encounter." *Rusher,* 966 F.2d at 877; *see also Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (citing *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)) ("So long as a reasonable person would feel free 'to disregard the police and go about his busi-

---

of the incident submitted as evidence, as to whether Foreman was asked to submit to the dog sniff of his vehicle or whether he was told that the sniff would be conducted. The testimony was that Trooper Wade asked for consent to conduct the sniff (Tr. of Jan. 16, 2003, at 13), yet the report conveys that Foreman was "informed" that the sniff would be conducted (Jan. 16, 2003, Mot. Suppress Hrg. Ex. 1.), thereby impacting the government's argument that Foreman consented to the second detention. Moreover, the sound on the trooper's videotape abruptly ends after the trooper announces that he is making the stop. Furthermore, the videotape of the incident shows no nod of agreement by Foreman, who is not in the picture at the time the trooper says the nod occurred. Finally, Trooper Wade noted a lack of luggage in Foreman's sport utility vehicle as one factor contributing to reasonable suspicion. (Tr. of Jan. 16, 2003, at 7.) When questioned by the court regarding luggage, the trooper admitted that he had not noticed the large white safe in plain view in the rear hatch of the sport utility vehicle. (Tr. of Jan. 16, 2003, at 51–53). This testimony led the court to question whether the trooper had even been able to see into the interior of the vehicle through the darkly tinted windows to make any observation about luggage, absent the vehicle or hatch doors being opened or the rear windows being down, none of which occurred until a full search of the vehicle was conducted after the dog sniff.

4. Though the dog sniff is not a search implicating the Fourth Amendment, *United States v. Place,* 462 U.S. 696, 706–07, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), Foreman's consent to the sniff would demonstrate the consensual nature of the encounter itself.

ness' ... the encounter is consensual"). The court found, based on the facts presented, that a reasonable person would not have felt free to terminate the encounter with the officer, get into his vehicle, and drive away, after being engaged by the officer in the manner Trooper Wade engaged Foreman.

■ In *United States v. Darity*, the officer stopped a vehicle with two passengers, one of whom presented fake identification. 181 F.3d 92, 1999 WL 397722, *1 (4th Cir.1999). The officer issued a warning ticket and turned to go back to his vehicle, as he feared for his safety if he pursued his suspicions alone. *Id.* At that moment, backup arrived, and the officer decided to question the defendants further. *Id.* The Fourth Circuit found the search and seizure to be objectively reasonable, noting that the officer had not pursued his reasonable suspicion immediately because he feared for his safety. *Id.* 1999 WL 397722 at *4. Trooper Wade had no such reason not to act on his suspicions before releasing Foreman.[5] In fact, Trooper Wade's agenda was entirely different. As the trooper admitted on the stand, he tells individuals that they are free to go after such traffic stops because he wants to secure consent to search vehicles, rather than utilizing the drug dogs, which are not, according to Trooper Wade, as accurate as a physical search. (Tr. of Jan. 16, 2003, at 33, 35.) Therefore, Trooper Wade ended the first stop, Foreman was free to go, and then Trooper Wade attempted to secure permission to search the vehicle. When that permission was not forthcoming, Trooper Wade fell back on use of the drug dog, citing as reasonable suspicion factors noted before and during the initial stop of Foreman. Such tactics are inappropriate. *Rusher* sets out the bounds of a lawful

traffic stop. Once that stop is over, the encounter has ended. If an officer has reasonable suspicion of criminal activity, he should act upon that suspicion before releasing the defendant. Playing a cat and mouse game—now you're free to go, now you're not—does not advance the interests of justice, nor does it preserve those rights promised under the Fourth Amendment.

The government attempts to argue the brevity of the second detention as a factor weighing in its favor. The stop is characterized as "a short detention for a drug dog sniff at the end of a lawful traffic stop." (Mot. Reconsider at 5.) However, the detention was not merely "at the end" of the lawful stop—it was an entirely different encounter. The lawful stop had ended. The temporal element notwithstanding, the second stop must be analyzed independent of the initial stop. For that reason, the court evaluated the asserted reasonable suspicion and determined that, as Trooper Wade chose to end the traffic stop, he had, or should have, satisfied any suspicions that he held at that time. The court then evaluated the second stop, and found that, between the end of the first encounter and the dog sniff of the car, there was nothing new—no consent and no additional suspicion which could justify a second detention for a dog sniff. The government argues that the totality of the circumstances includes the reasonable suspicion developed during the initial stop. However, the court does not so find. The stops are independent; the analyses are separate. As to the repeated characterization of the length of the detention, the brevity of an unlawful seizure makes it no less abhorrent under the Fourth Amendment.

---

**5.** Trooper Wade indicated no fear for his safety, there was nothing threatening about the stop or defendant's conduct, and the backup

officer and dog had already arrived on the scene.

For the reasons stated above, the motion for reconsideration is **DENIED**. The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to counsel for both parties.

**IT IS SO ORDERED.**