Andre Timothy VENEY, Plaintiff,

v.

F.J. OJEDA and Earl Jones,
Defendants.

No. 1:03 CV 1410.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 15, 2004.

Daniel J. Travostino, Daniel J. Travostino PC, Leesburg, VA, for Plaintiff.

Julia Bougie Judkins, Trichilo, Bancroft, McGavin, Horvath & Judkins, P.C., Fairfax, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this action, plaintiff brings claims of (i) illegal seizure and excessive use of force under 42 U.S.C. § 1983 against defendants F.J. Ojeda and Earl Jones, officers of the Leesburg, Virginia Police Department and (ii) assault and battery, intentional infliction of emotional distress, and false arrest under Virginia common law solely against defendant Jones. Defendants seek summary judgment pursuant to Rule 56, Fed. R.Civ.P., on the grounds (i) that defendants are entitled to qualified immunity and (ii) that on the basis of undisputed facts, defendant Jones is entitled to judgment as a matter of law on plaintiff's claims of conspiracy, intentional infliction of emotional distress, and violation of the Eighth and Fourteenth Amendments.

For the reasons that follow, defendants' motion must be granted in part and denied in part. It must be granted with respect to plaintiff's claims (i) that Officers Ojeda and Jones violated plaintiff's Fourth Amendment rights when they initiated the traffic stop, directed plaintiff to exit the vehicle, and attempted to conduct a pat-down search of plaintiff, (ii) that Officers Ojeda and Jones conspired to violate plaintiff's Fourth Amendment rights, and (iii) that Officer Jones intended to and did inflict emotional distress on plaintiff in violation of Virginia common law. It must be denied in all other respects because there are disputed issues of fact on the questions of excessive use of force and probable cause for arrest.

1. For clarity, plaintiff, Andre Timothy Veney, is hereinafter referred to as "plaintiff," while his cousin, Andre Thomas Veney, is referred to as "Andre."

## I.

On the afternoon of April 15, 2003, plaintiff Andre Timothy Veney, a twenty-one-year-old African–American male, was traveling as a passenger in a vehicle driven by Candace Ives, a white female, on Edwards Ferry Road in Leesburg, Virginia. Also traveling with plaintiff and Ives were two African–American males—Andre Thomas Veney, plaintiff's cousin,[1] and Christopher Newell. While patrolling the area at approximately 2:30 p.m., Officer F.J. Ojeda of the Leesburg Police Department observed Ives's vehicle traveling at speeds of up to forty miles per hour in a twenty-five mile per hour zone. After pacing the vehicle for approximately one-third of a mile to confirm the vehicle's excessive speed, Officer Ojeda activated his emergency lights to initiate a traffic stop. Ives responded appropriately by pulling over in the parking lot of a convenience store on Heritage Way. While plaintiff disputes that Officer Ojeda initiated the traffic stop because Ives was speeding, plaintiff, Andre and Newell concede that they do not know how fast Ives was traveling, nor were they aware of the speed limit in that area.

Before approaching the vehicle on foot, Officer Ojeda initiated a call for back-up because the vehicle was occupied by four individuals and because he observed Andre and Newell, who were seated in the back seat of the car, glancing at him through the rear window and reaching under the back seats.[2] Officers Earl Jones and Corey Smith, also of the Leesburg Police Department, responded to the call and, shortly thereafter, arrived at the scene. Officer Jones assisted Officer Ojeda in effecting the stop, while Officer Smith's role

2. Officer Ojeda and other officers of the Leesburg Police testified that officers routinely call for back-up prior to initiating a traffic stop when, as here, a vehicle is occupied by several individuals or when, as was also true here, the stop is initiated in a high crime area.

was limited to providing additional security at the scene.

As Officer Ojeda approached the driver's side window to advise Ives of the speeding violation and to ask for her license and registration, he states he smelled a faint odor of marijuana inside the vehicle. Plaintiff, Ives, Andre, and Newell all deny that they or anyone else had smoked marijuana either inside the vehicle or before entering it. Because Officer Ojeda suspected that either Ives or one of her passengers had been smoking marijuana, he requested that Ives exit the vehicle. Ives complied and in response to further questions, she denied that she or any of her passengers had weapons or drugs in the vehicle, but stated that she often permitted others to use the vehicle and believed she could not be held responsible for anything other individuals might have used or brought into the vehicle. At Officer Ojeda's request, Ives consented to a search of the vehicle and Officer Ojeda then asked plaintiff, Andre, and Newell to exit the vehicle so that he and Officer Jones could search the vehicle.

As directed, Andre and Newell exited the vehicle and were patted down by Officer Ojeda. Plaintiff, however, remained in the vehicle and Officer Ojeda testified that he observed plaintiff reaching to the floorboard of the vehicle, but could not discern what plaintiff was reaching for on the floorboard. Officer Ojeda again asked plaintiff to exit the vehicle. This time plaintiff complied; he exited the vehicle while talking on a cell phone. Plaintiff, Ives, Andre and Newell testified that plaintiff was using the cell phone to call his father to obtain assistance with respect to the traffic stop.

Once plaintiff exited the vehicle, Officer Jones directed him to the rear of the vehicle so that the officer could conduct a pat-down search of plaintiff. Plaintiff complied and went to the rear of the vehicle.

At this point, the parties' versions of the events diverge. According to Officer Jones, plaintiff refused several times to place his hands on the trunk of the vehicle as directed and that once plaintiff was in position for Officer Jones to conduct the pat-down search, Officer Jones saw plaintiff's hands moving toward plaintiff's waistband causing the officer to believe that plaintiff might be reaching for a weapon. Officer Jones states he could not tell whether plaintiff actually had a weapon because plaintiff was dressed in baggy clothing. Officer Jones also states that he observed that plaintiff appeared to be "sizing him up," *i.e.*, assessing the officer's size in preparation for a possible attack. Given this and his concern about a possible weapon, Officer Jones states that he wrapped his arms around plaintiff's upper body, pinning plaintiff's arms to his sides and then, with Officer Ojeda's help, placed plaintiff on the ground and handcuffed him. Although Officer Ojeda testified that he assisted Officer Jones in this manner, he stated that he was looking in a different direction when plaintiff allegedly reached toward his waistband and thus observed only a "flurry of movement" by plaintiff.

Plaintiff's version of the events contrasts sharply with the officers' version. According to plaintiff, Officers Ojeda and Jones agreed through non-verbal signals while plaintiff was walking toward the rear of the vehicle that Officer Jones would exert force against plaintiff. Plaintiff, Ives, Andre, and Newell testified that, even though plaintiff cooperated fully with the Officers, did nothing to provoke them, and complied with all of Officer Jones's instructions, Officer Jones nonetheless and without assistance from the other officers, forcefully threw plaintiff to the ground, causing injury to plaintiff's hand. While the parties dispute the nature and motivation for the force exerted, there is no dispute that subsequent to Officer Jones's exertion of

force, plaintiff was placed under arrest for obstruction of justice in violation of Virginia Code § 18.2–460.

After the arrest and while plaintiff waited in Officer Ojeda's police vehicle, Officers Ojeda and Jones proceeded to search the vehicle. According to the officers, this search disclosed marijuana seeds in the center console and an empty box of Philly Blunts, cigar paper typically used to roll marijuana cigarettes. Plaintiff disputes that these items were found in the vehicle and the officers neither saved the items, nor filed a report that they were found.

Plaintiff was then taken to police headquarters, charged with obstruction of justice, and released. This charge was ultimately dropped at the prosecutor's request; an order of nolle prosequi was entered on June 24, 2003.

Following his release, plaintiff returned to his great-grandmother's house in Leesburg where he used ice to treat the swelling injury to his hand caused by Officer Jones's exertion of force. Plaintiff also alleges that he suffered mental distress as a result of the incident. Specifically, he testified that he "didn't feel right" and felt depressed for a couple of days following the incident, but that this depression did not affect his activities. Plaintiff concedes he never sought medical treatment for either his hand injury or his depression.

Plaintiff originally filed a nine count complaint in the Circuit Court of Loudoun County, Virginia against Officers Ojeda and Jones alleging (i) a violation of his constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments, (ii) a violation of his statutory civil rights, and (iii) conspiracy to violate his civil rights. Plaintiff's complaint asserts claims of (iv) assault and battery, (v) intentional infliction of emotional distress, and (vi) false arrest against Officer Jones. On November 10, 2003, defendants removed the case to this district pursuant to 28 U.S.C. §§ 1441 and 1446. On November 24, 2003, defendants filed a motion to dismiss plaintiff's claim of statutory conspiracy under Virginia Code § 18.2–499 pursuant to Rule 12(b)(6), Fed.R.Civ.P., which motion was granted on December 19, 2003. *See Veney v. Ojeda et al.,* Civil Action No. 03–1410–A (E.D.Va. Dec. 19, 2003) (Order).

On December 29, 2003, plaintiff filed an amended complaint alleging (i) the remaining seven counts stated in the original complaint and (ii) a claim of conspiracy to violate his civil rights in violation of § 1983. Defendants now seek summary judgment on plaintiff's claims on the following grounds: (i) that defendants are entitled to qualified immunity and (ii) that the undisputed facts compel judgment for defendants on plaintiff's claims of conspiracy, intentional infliction of emotional distress, and violation of the Eighth and Fourteenth Amendments. Defendants also contend that the defense of qualified immunity supports dismissal of plaintiff's pendent state law claims. Thus, principally at issue here is (i) whether defendants are entitled to qualified immunity and (ii) whether the undisputed record facts show that defendants are entitled to judgment as a matter of law with regard to plaintiff's claims of conspiracy and intentional infliction of emotional distress.

## II.

The affirmative defense of qualified immunity shields government officials from civil liability for alleged civil rights violations to the extent the officials' "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In essence, qualified immunity is a government official's "entitlement not to stand trial or face the other burdens of litiga-

tion" in certain circumstances. *Brown v. Gilmore*, 278 F.3d 362, 366–67 (4th Cir. 2002) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Thus, where a defendant seeks qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *see also Clem v. County of Fairfax, Virginia*, 150 F.Supp.2d 888, 892 (E.D.Va.2001), *aff'd in part, dismissed in part, Clem v. Corbeau*, 284 F.3d 543 (4th Cir.2002). Yet, while it is important to resolve the question of qualified immunity at the summary judgment stage of the proceedings, that importance "does not mean... that summary judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense...." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir.1992).

■ In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court made clear that an officer's claim for qualified immunity is subject to a two-step analysis. *See Saucier*, 533 U.S. at 200, 121 S.Ct. 2151. The threshold question that must be addressed is whether the facts alleged, taken in the light most favorable to the plaintiff, establish that the officers' conduct violated a constitutional right. *See id.* at 201, 121 S.Ct. 2151; *see also Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir.2003); *Batten v. Gomez*, 324 F.3d 288, 293 (4th Cir.2003). If no constitutional violation is found, qualified immunity is clearly unnecessary, as

plaintiff's underlying constitutional claim simply fails. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151; *Clem*, 150 F.Supp.2d at 893 (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Yet, if a constitutional violation is found, the second step in the two-step *Saucier* analysis is to determine whether the constitutional right was "clearly established" at the time of the events at issue such that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201–02, 121 S.Ct. 2151 (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)); *Batten*, 324 F.3d at 293.[3] Notably, a determination as to whether a right is "clearly established" must be made in light of the specific factual context of the case, and not as a general proposition. *See id.* at 201, 121 S.Ct. 2151. If the answer to both *Saucier* questions is in the affirmative, the government official is immune from suit. *See Batten*, 324 F.3d at 293–94.

■ In his complaint, plaintiff claims that his constitutional rights were violated when Officers Ojeda and Jones (i) initiated the traffic stop, (ii) directed plaintiff to exit the vehicle, (iii) attempted to conduct a pat-down search, (iv) exerted excessive force against plaintiff in effecting the arrest, and (v) falsely arrested plaintiff for obstruction of justice. Although plaintiff claims that these actions violated his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, these alleged constitutional violations need only be analyzed under the Fourth

---

**3.** The Supreme Court has made clear "that a right may be deemed clearly established even if there is no prior decision addressing the precise conduct at issue, so long as its illegality would have been evident to a reasonable officer based on existing caselaw." *Rogers v. Pendleton*, 249 F.3d 279, 285–86 (4th Cir. 2001) (citing *Wilson*, 526 U.S. at 615, 119

S.Ct. 1692). This second step of the *Saucier* analysis is intended "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Saucier*, 533 U.S. at 206, 121 S.Ct. 2151).

Amendment for it is clear that plaintiff cannot raise a due process claim under either the Fifth or Fourteenth Amendments.[4] Neither are his claims cognizable under the Eighth Amendment's prohibition against cruel and unusual punishment as that protection applies only post-conviction.[5] Thus, the task here is to determine for each alleged violation, first, whether, taking the facts in the light most favorable to plaintiff, Officers Ojeda and Jones violated plaintiff's Fourth Amendment right and if so, whether the Fourth Amendment right violated was "clearly established" at the time of the incident. In analyzing whether the right was "clearly established," it is necessary to determine whether a reasonable officer would have known at the time of the incident that the allegedly violative conduct was unlawful.

### a. Traffic stop

Plaintiff first claims that his Fourth Amendment rights were violated when Officer Ojeda pulled Ives's vehicle over for speeding. The Supreme Court has made clear that because the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons,'" automobile stops violate the Fourth Amendment unless they are reasonable. *United*

States v. Stewart, 149 F.Supp.2d 236, 240 (E.D.Va.2001) (quoting *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances.")). And, under the principles set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, an automobile stop is reasonable if it is "justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *Stewart*, 149 F.Supp.2d at 240 (quoting *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir.1993)). With regard to traffic stops in particular, courts have held that a stop is reasonable and passes muster under the Fourth Amendment "if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Castillo*, 76 F.3d 1114, 1117 (10th Cir.1996); *see also Hassan El*, 5 F.3d at 730; *United States v. Banks*, 971 F.Supp. 992, 996 (E.D.Va. 1997); *United States v. Melgar*, 927 F.Supp. 939, 947 (E.D.Va.1996) ("And the individual's violation of a traffic rule clearly provides such an objective, legitimate basis for a stop.").

---

**4.** *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("Today we... hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment...."); *Winfield v. Bass*, 106 F.3d 525, 530 n. 2 (4th Cir.1997) (stating that due process claim against state actors cannot be assessed under the Fifth Amendment which applies only to federal actors). While an equal protection claim under the Fourteenth Amendment might exist under other circumstances, *see, e.g., Williams v. Hansen*, 326

F.3d 569 (4th Cir.2003), plaintiff has neither specifically raised nor pursued such a claim.

**5.** *See Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. 1865 ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection... in cases... where the deliberate use of force is challenged as excessive and unjustified.'") (citing *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)); *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.").

■ These principles applied here compel the conclusion that Officer Ojeda had an objectively reasonable suspicion that defendant was speeding in violation of Virginia law. *See* Va.Code § 46.2–870 *et seq.* (setting forth laws regarding maximum speed limits). Notably, neither plaintiff nor Ives, Andre, or Newell testified that Ives was traveling at or below the posted speed limit. Thus, the traffic stop met the requirements of the Fourth Amendment. *See, e.g., United States v. Foreman,* 269 F.Supp.2d 683, 684–85 (E.D.Va.2003) (holding that traffic stop was lawful under Fourth Amendment because plaintiff was speeding and there were windshield obstructions in violation of Virginia law); *Banks,* 971 F.Supp. at 996 (holding that traffic stop was lawful under Fourth Amendment because plaintiff was traveling slower than the posted speed limit and weaving within his own lane, both in violation of Virginia law). The fact that Officer Ojeda reached the conclusion that the vehicle was speeding based solely on his observations and without the assistance of a radar device does not compel a different conclusion.[6] Thus, plaintiff has not established a constitutional violation by either officer based on the traffic stop and it is therefore unnecessary on this claim to proceed to the second step of the *Saucier* analysis. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Clem,* 150 F.Supp.2d at 893. Accordingly, it follows that summary judgment in favor of Officer Ojeda must be granted on plaintiff's claim that Officer Ojeda violated his Fourth Amendment right when he initiated the traffic stop.[7]

### b. *Direction to exit the vehicle*

■ Plaintiff next appears to claim that his Fourth Amendment rights were violated when Officers Ojeda and Jones directed plaintiff to exit the vehicle. This claim fails for it is well-settled that "[o]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *see also Stewart,* 149 F.Supp.2d at 244. This is so because an officer's decision to order suspects from the vehicle "is a valid precautionary measure designed to afford a degree of protection to the investigating officer." *United States v. Taylor,* 857 F.2d 210, 214 (4th Cir.1988). Moreover, the "incremental intrusion" resulting from

---

6. *See United States v. Charles,* 2003 WL 21730639, at *3 (D.Del. July 23, 2003) (rejecting defendant's contention that "there was no reasonable suspicion to support the traffic stop of his vehicle because the radar equipment had not been properly calibrated and, therefore, did not provide a reliable gauge of his speed of travel" on the ground that "the officer's observations of defendant's driving are sufficient to support the stop of the vehicle") (citing *Whren,* 517 U.S. at 819, 116 S.Ct. 1769); *cf. United States v. Wallace,* 213 F.3d 1216, 1220 (9th Cir.2000) ("We don't call upon the officer to be scientists or carry ... burdensome equipment to measure light transmittance ... If an officer forms an opinion [based on] common sense, [that is] sufficient to support a conviction."); *Stewart,* 149 F.Supp.2d at 241 (concluding that the officer has an objectively reasonable suspicion that the tinting of the vehicle's windows reduced the total light transmittance to less than thirty-five percent in violation of Virginia law even though the officer relied solely on his own perceptions and not a testing device) (citing *United States v. Lender,* 985 F.2d 151, 154 (4th Cir.1993)).

7. Although plaintiff claims that both officers violated his rights in initiating the traffic stop, he offers no evidence that Officer Jones played any role in initiating the stop. Thus, he fails to state a claim against Officer Jones with regard to the traffic stop. Hence, plaintiff's claim, if any, against Officer Jones for the stop must be dismissed on this additional ground.

an officer's request that an individual exit the vehicle is *de minimus* when compared to the legitimate concerns about the officer's safety. *Mimms,* 434 U.S. at 108–111, 98 S.Ct. 330. The same bright line rule extends to the passengers of the vehicle. *See Maryland v. Wilson,* 519 U.S. 408, 410, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

While it is not clear from the evidence whether the exit order issued from Officer Ojeda or Officer Jones or both of them, these governing principles of law make clear that the officers acted lawfully in stopping Ives's vehicle and in ordering the occupants to exit the vehicle, particularly where, as here, the vehicle was occupied by four individuals and the stop occurred in a high crime area. *See Stewart,* 149 F.Supp.2d at 244. Thus, plaintiff has not established a constitutional violation with regard to the officers' direction to exit the vehicle and hence the second step of the *Saucier* analysis is unnecessary with respect to this aspect of defendant's Fourth Amendment claim. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Clem,* 150 F.Supp.2d at 893. It follows that summary judgment on plaintiff's claim must be granted insofar as it is based on a claim that plaintiff's Fourth Amendment right was violated as a result of the officers' direction to exit the vehicle.

### c. *Pat-down search*

■ Plaintiff next appears to argue that his Fourth Amendment rights were violated when Officers Ojeda and Jones required that he submit to a pat-down search. Even assuming a pat-down of plaintiff occurred, this claim fails, for is well-settled that pat-down searches incident to a reasonable *Terry* stop are permissible. *See Terry,* 392 U.S. at 30–31, 88 S.Ct. 1868. In any event, it appears plain-

tiff was never subjected to a search of his person. Instead, the evidence makes clear, and plaintiff does not dispute, that Officer Jones exerted force against him and arrested him without first searching him. Thus, there is no doubt that plaintiff does not state a claim that either officer violated his rights by subjecting him to a pat-down search. Moreover, there is no doubt that plaintiff may not assert a Fourth Amendment claim arising from Officer Ojeda's pat-down search of Andre and Newell. *See Melgar,* 927 F.Supp. at 948 ("[I]t is important to note that the Fourth Amendment right is a personal one which may not be vicariously asserted; an individual cannot complain that the search or seizure of someone else violated his right to privacy.") (citing *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)). Thus, to the extent plaintiff raises a claim with regard to a pat-down search, summary judgment must be granted.[8]

### d. *Officer Jones's use of force*

■ Plaintiff next claims that his Fourth Amendment rights were violated when Officer Jones threw him forcibly to the ground without reason or provocation and hence used excessive force in arresting him. In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court made clear that a claim of excessive use of force by an officer arises under the Fourth Amendment which guarantees individuals the right "to be secure in their persons... against unreasonable... seizures" of the person and thus includes the right to be free of physically abusive governmental conduct. *Graham,* 490 U.S. at 394, 109 S.Ct. 1865; *see also Jones v. Buchanan,* 325 F.3d 520, 527 (4th Cir.2003). Thus, while "Fourth Amendment jurisprudence

---

**8.** It is unclear from the record whether a pat-down search was conducted after plaintiff's arrest, but, in any event, it is not relevant as no claim is asserted on that basis.

has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," [9] a claim that a law enforcement officer has used excessive force must nonetheless be analyzed under an objective reasonableness standard. *See Graham,* 490 U.S. at 395–97, 109 S.Ct. 1865; *Jones,* 325 F.3d at 527. This objective reasonableness standard is "not capable of precise definition or mechanical application." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (citing *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Instead, a court assessing the reasonableness of an officer's exertion of force must consider the facts and circumstances of the case from the perspective of a reasonable officer at the time of the incident, while keeping in mind that law enforcement officers often must make split-second judgments under tense and uncertain circumstances. *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865. And in doing so, a court must consider three factors set forth in *Graham,* namely (i) "the severity of the crime at issue," (ii) "whether the suspect poses an immediate threat to the safety of the officers or others," and (iii) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865 (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).[10] In addition to these factors, the Fourth Circuit and some district courts since *Graham* have considered a fourth factor, namely the extent of the suspect's injury.[11] But, in the end, distilled to its essence, the question that a court must answer to determine whether an officer's exertion of force violated the Fourth Amendment is whether a reasonable officer in the same circumstances would have concluded that the threat presented justified the force

9. *Terry,* 392 U.S. at 22–27, 88 S.Ct. 1868.

10. *See, e.g., Rowland v. Perry,* 41 F.3d 167, 174 (4th Cir.1994) (assessing *Graham* factors).

11. *See Jones,* 325 F.3d at 527 (citing *Rowland,* 41 F.3d at 174 and *Kane v. Hargis,* 987 F.2d 1005, 1008 (4th Cir.1993)); *Brown,* 278 F.3d at 369 (concluding that officer did not use excessive force in part because plaintiff "alleg[ed] no injury of any magnitude"); *Drake v. Higgins,* 1999 WL 462987, at *5 (W.D.Va. June 10, 1999) ("The court may also consider the degree of harm caused by the application of force in determining whether it was excessive or reasonable."); *Banks v. Town of Culpeper,* 1995 WL 48267, at *5 (W.D.Va. Feb.2, 1995) ("The extent of a plaintiff's injuries must be looked at in light of the circumstances of the case, to determine if, on the whole, the use of force was reasonable."); *Cooper v. City of Virginia Beach,* 817 F.Supp. 1310, 1319 (E.D.Va.1993), *aff'd, Cooper v. City of Virginia Beach,* 21 F.3d 421 (4th Cir.1994) (considering the lack of severe physical injury in concluding that there was no excessive force and citing authority in support of that

principle) (citing *Darnell v. Phillips,* 914 F.2d 247 (Table), 1990 WL 134599 (4th Cir. Sept.19, 1990) (unpublished disposition)).

The circuits disagree on the importance of a plaintiff's injuries in assessing an excessive use of force claim. *See, e.g., Bastien v. Goddard,* 279 F.3d 10, 14 (1st Cir.2002) ("Although the severity of the injury also may be considered, *see, e.g., Dean v. City of Worcester,* 924 F.2d 364, 369 (1st Cir.1991), we have stated explicitly that a 'serious injury' is not a prerequisite to recovery."); *Headwaters Forest Defense v. County of Humboldt,* 240 F.3d 1185, 1199 (9th Cir.2000), *vacated and remanded on other grounds by* 534 U.S. 801, 122 S.Ct. 24, 151 L.Ed.2d 1 (2001) ("[W]hether the use of force poses a risk of permanent or significant injury is a factor to be considered in evaluating the need for the force used in a particular case—but it is certainly not dispositive."); *Wardlaw v. Pickett,* 1 F.3d 1297, 1304 n. 7 (D.C.Cir.1993) (considering the extent of the plaintiff's injuries in determining whether the force exerted was unreasonable but noting that "we do not suggest that an individual *must* suffer significant injuries in order for the force used to be unreasonable") (emphasis in original).

exerted. *See Jones*, 325 F.3d at 527 (citing *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir.1996)).

**** The facts concerning the circumstances that led to Officer Jones's exertion of force against plaintiff are sharply disputed. Given this conflict in the evidence, *Saucier* teaches that the qualified immunity analysis must proceed by determining whether the facts alleged, taken in the light most favorable to the plaintiff, establish a constitutional violation. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. And *Graham* and its progeny teach that this determination is made by considering plaintiff's evidence with respect to each of the four factors set forth above. *See Jones*, 325 F.3d at 528. When this is done, it is apparent that plaintiff has shown that there is a triable issue of fact as to whether Officer Jones used excessive force in effecting the arrest. Thus, plaintiff's evidence shows that plaintiff (i) had not committed any crime, (ii) did not at any time reach for or appear to reach for a weapon or threaten the officers in any way, and (iii) cooperated fully with the officers and complied with their instructions. Assuming these facts, Officer Jones's forceful throwing of plaintiff to the ground may be viewed as unreasonable and excessive in the circumstances.

**** The fourth factor, namely the extent of plaintiff's injury, is not to the contrary. The evidence as to this factor, unlike the evidence on the other factors, is not in dispute. Specifically, plaintiff presents evidence that he suffered a hand injury which resulted in swelling and defendants do not offer any evidence to the contrary. Clearly, this injury was neither severe nor serious and it is true that the Fourth Circuit and some district courts in this circuit have relied on a claimant's lack of permanent or severe physical injury resulting from an officer's use of force in concluding that the force exerted was not excessive under the Fourth Amendment.[12] Yet, these cases are neither apposite nor persuasive. They involve circumstances, unlike here, where the application of the *Graham* factors supports the result reached there and they reflect the fact that most arrests reasonably involve some use of force and some measure of discomfort or pain for the person arrested. But these cases do not hold that a serious or severe injury is a *sine qua non* of a constitutional tort[13] or, put differently, that excessive force is constitutionally excusable if it happens, by lucky chance, not to cause a serious injury.[14]

Because on plaintiff's evidence Officer Jones's use of force may have been consti-

---

12. *See id.*

13. *See supra* note 11.

14. In addition to considering the three *Graham* factors and the extent of the injury, some post-*Graham* courts dispose of excessive force claims by drawing a distinction between *de minimus* and non *de minimus* force. *See, e.g., Brissett v. Paul*, 141 F.3d 1157 (Table), at *4 (4th Cir. Apr.6, 1998) (holding that officer acted reasonably and thus did not violate plaintiff's Fourth Amendment rights when officer pushed plaintiff against vehicle, handcuffed plaintiff, and held plaintiff's hands in such a way as to inflict some pain, but no serious injury, because plaintiff refused to cooperate fully with officer's instructions and did not sustain any major physical injury);

*Mensh v. Dyer*, 956 F.2d 36, 40 (4th Cir.1991) (same when officers pushed plaintiff against wall and handcuffed him to effectuate arrest because plaintiff appeared uncooperative); *Darnell*, 914 F.2d 247 (Table), 1990 WL 134599, at *5 (same when officer lightly pushed plaintiff against car and tightly handcuffed plaintiff on the ground that plaintiff had resisted arrest); *cf. Riley v. Dorton*, 115 F.3d 1159, 1166–67 (4th Cir.1997) (holding that officer was not liable under the Due Process clause of the Fourteenth Amendment, which applies to pretrial detainees, for inserting the tip of a pen into plaintiff's nose and slapping him with "medium" force because the injuries sustained were *de minimus*).

These cases are all inapposite factually because, unlike this case, they proceed on the premise that the person arrested resisted.

tutionally excessive, the next step in the *Saucier* qualified immunity analysis is to determine whether the constitutional right violated, namely plaintiff's right "to be secure ... against unreasonable seizure," was "clearly established" at the time of the incident. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 (setting forth the second step in the two-step qualified immunity analysis). This step requires determining whether a reasonable officer in Officer Jones's shoes could have believed that his use of force was lawful. *See id.* at 201–02, 121 S.Ct. 2151. Put differently, it must be ascertained whether Officer Jones made a "reasonable mistake[ ] as to the legality of [his] actions." *Id.* at 206, 121 S.Ct. 2151. Again, taking the evidence in the light most favorable to the plaintiff, it appears that a reasonable officer in Officer Jones's shoes could not have believed that Officer Jones's exertion of force was necessary or reasonable. This is so because according to plaintiff, Ives, Andre, and Newell, plain-

tiff fully cooperated with Officer Ojeda's and Officer Jones's instructions in exiting the vehicle and submitting to a pat-down search and did not reach for, or appear to reach for, a weapon. While it is certainly true that an officer has the "right to use some degree of physical coercion or threat" to effect a traffic stop,[15] given the circumstances present here, there is at least a genuine issue of fact as to whether it was reasonable for Officer Jones to grab plaintiff and forcefully throw him to the ground.[16] Thus, summary judgment on defendant's claim of qualified immunity must be denied.[17]

#### e. *Arrest for obstruction of justice*

■ Plaintiff next claims that his Fourth Amendment right to be free from unreasonable seizure was violated when Officers Ojeda and Jones falsely arrested him for obstruction of justice in violation of Virginia Code § 18.2–460. It is well-settled that because an arrest is a "seizure of the

---

Moreover, the distinction between *de minimus* and non *de minimus* force is question begging and generally unhelpful, except as a general reminder that arrests typically require the use of some force. *See Brissett*, 141 F.3d at *4 (stating that "[n]ot every push or shove, even if it may later seem unnecessary" violates the Fourth Amendment in concluding that the force exerted was insufficient to violate plaintiff's Fourth Amendment right) (citing *Graham*, 490 U.S. at [396, 109 S.Ct. at] 1872); *Darnell*, 914 F.2d 247 (Table), 1990 WL 134599 at *5 (same). The question is whether under *Graham* and its progeny the force exerted was constitutionally excessive in the circumstances.

**15.** *Terry*, 392 U.S. at 22–27, 88 S.Ct. 1868.

**16.** *See, e.g., Jones*, 325 F.3d at 532 ("[C]ourts have consistently applied the *Graham* holding and have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity."); *Rowland*, 41 F.3d at 172–74 (denying

qualified immunity on the ground that "no reasonable officer could have believed [the officer's] conduct to be lawful" after the officer "thr[ew] his weight against Rowland's right leg and wrench[ed] [Rowland's] knee" after Rowland stole a five dollar bill); *Kane*, 987 F.2d at 1008 (denying qualified immunity on the ground that "it would have been apparent to a reasonable officer that his use of force was excessive" after the officer pinned plaintiff to the ground and pushed her face into the pavement when the plaintiff attempted to resist arrest and flee).

**17.** Although plaintiff claims that both Officer Ojeda and Officer Jones violated his Fourth Amendment rights when they exerted excessive force against him, plaintiff has not set forth any evidence—either in his own statements or the statements of Ives, Andre, and Newell—that Officer Ojeda exerted any force against him or assisted Officer Jones in exerting force. Thus, plaintiff fails to state a claim against Officer Ojeda on this ground and to the extent plaintiff's complaint asserts such claim against Officer Ojeda, it must be dismissed.

person," individuals are protected from unreasonable arrests under the Fourth Amendment,[18] and that, subject to certain exceptions not present here, arrests are reasonable only if based on probable cause.[19] And, in this regard, the Supreme Court has made clear probable cause exists "when the 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, that the suspect has committed, is committing, or is about to commit an offense.'"[20] Notably, a court determining whether probable cause exists must consider the facts and circumstances known to the officer at the time of the arrest and must determine whether probable cause exists based on a "totality-of-the-circumstances analysis." *Cooper*, 817 F.Supp. at 1314 (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see Wilson*, 337 F.3d at 398 (citing *Smith v. Tolley*, 960 F.Supp. 977, 994 (E.D.Va.1997)). And, in this regard, two factors in particular govern the determination of probable cause, namely "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *See Brown*, 278 F.3d at 368 (*Pritchett*, 973 F.2d at 314 (4th Cir.1992)). Thus, in this instance, for Officers Ojeda and Jones to have had probable cause for plaintiff's arrest, the facts and circumstances known to the officers at the time of the arrest must have warranted a reasonable belief that plaintiff was or was on the verge of unlawfully obstructing the officers in the performance of their duties. *See id.* at 398–99 (citing *Pritchett*, 973 F.2d at 314).

 Officers Ojeda and Jones testified that they had probable cause to arrest plaintiff because (i) he refused to comply with their instructions to exit the car and submit to a pat-down search, (ii) he appeared to be assessing Officer Jones's size in preparation for an attack, and (iii) he appeared to reach for a weapon near his waistband as Officer Jones approached him to conduct the pat-down search. Plaintiff however disputes this testimony and contends that he fully cooperated with the officers, willingly submitted to the pat-down search, and did not at any time reach for or appear to reach for a weapon. Taking the facts as alleged in the light most favorable to plaintiff, as required, the analysis points persuasively to the conclusion that the facts and circumstances present here did not warrant a reasonable belief that plaintiff was obstructing or on the verge of obstructing the officers in the performance of their duties. There is no doubt that an individual who fully cooperates with an officer's instructions during the course of a traffic stop is not obstructing justice.[21] Thus, on plaintiff's version of

---

18. *See Rogers*, 249 F.3d at 290.

19. *See Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

20. *Wilson*, 337 F.3d at 398 (citing *Pritchett*, 973 F.2d at 314); *see also Graham*, 490 U.S. at 396, 109 S.Ct. 1865 ("The Fourth Amendment is not violated by an arrest based on probable cause....") (citing *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971)); *Brown*, 278 F.3d at 367 ("For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to

convict is not required.") (citing *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

21. Virginia Code § 18.2–460 provides that:
A. If any person without just cause knowingly obstructs a judge, magistrate, justice, juror, attorney for the Commonwealth, witness or any law-enforcement officer in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such judge, magistrate, justice, juror, attorney for the Commonwealth, witness, or law-enforcement officer, he shall be guilty of a Class 2 misdemeanor.

the events, Officers Ojeda and Jones did not have probable cause and hence the arrest violated plaintiff's Fourth Amendment rights. *See, e.g., Rogers,* 249 F.3d at 291 (holding that plaintiff was arrested without probable cause because the " 'contours of the [obstruction] offense,' *Pritchett,* 973 F.2d at 314, did not encompass his conduct").

Because the answer to the threshold *Saucier* question—namely, whether the officers' conduct violated a constitutional right—is in the affirmative, it is necessary to determine whether the constitutional right violated is "clearly established." *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. And to make this determination, it must be determined whether it would have been clear to a reasonable officer standing in Officer Ojeda's and Officer Jones's shoes at the time of the incident that the arrest was unlawful. To answer this question, it is necessary to canvass the factual record for what it discloses about what the officers knew and perceived "for these are the predicate facts for determining how a reasonable officer would respond in the circumstances at bar." *See Clem,* 150 F.Supp.2d at 894. In this instance, the factual record regarding what the officers knew and perceived is disputed. Whereas Officers Ojeda and Jones testified that

plaintiff refused to cooperate with their instructions and submit to a pat-down search and appeared to reach for a weapon, plaintiff, Ives, Andre, and Newell each testified that plaintiff cooperated fully. Taking the evidence presented in the light most favorable to the plaintiff, it is clear that a reasonable officer would have understood that there would be no probable cause to arrest an individual for obstruction of justice if that individual, in the course of a traffic stop, was cooperative and complied fully with the officer's instructions.[22] It is clearly established that an arrest in such circumstances would violate the Fourth Amendment. Thus, defendants are not entitled to summary judgment on qualified immunity grounds for this aspect of the Fourth Amendment claim. *See Clem,* 150 F.Supp.2d at 895 ("A close review of the current record compels the conclusion that neither summary judgment nor qualified immunity can be determined at this time because there remain disputes regarding what Officer Corbeau actually perceived and the reasonableness of his conclusion either that plaintiff was armed or that he posed a threat of death or serious physical injury.").

## III.

Defendant Jones also asserts that he is immune from suit with regard to plaintiff's

---

B. If any person, by threats or force, knowingly attempts to intimidate or impede a judge, magistrate, justice, juror, attorney for the Commonwealth, witness, or any law-enforcement officer, lawfully engaged in his duties as such, or to obstruct or impede the administration of justice in any court, he shall be deemed to be guilty of a Class 1 misdemeanor....

*See also Rogers,* 249 F.3d at 291 (interpreting the statute); *Payne v. Commonwealth,* 2003 WL 22843607 (Va.App. Dec.2, 2003) (applying the statute); *Ruckman v. Commonwealth,* 28 Va.App. 428, 505 S.E.2d 388, 389–90 (1998) (interpreting and applying the statute).

**22.** *See Wilson,* 337 F.3d at 403 (stating in assessing qualified immunity that there is no

probable cause to arrest an individual for probable cause if that individual was merely harassing or irritating to an arresting officer); *Jones v. Commonwealth,* 141 Va. 471, 478–79, 126 S.E. 74 (1925) (interpreting "obstruction" in earlier statute to require that defendant not merely "impose or impede" an officer, but rather that he actually intended "to prevent the officer from performing his duty"); *Ruckman,* 505 S.E.2d at 389 (holding that to be liable for obstruction of justice an individual must actually "impede or prevent the officer from performing [his] task" and "merely render[ ] the officer's task more difficult").

pendent state law claims of assault and battery, intentional infliction of emotional distress, and false arrest under Virginia common law.[23] To determine whether Officer Jones is immune from suit arising from plaintiff's state law claims, it is necessary to examine Virginia immunity law. *See Gray–Hopkins v. Prince George's County, Maryland,* 309 F.3d 224, 232 (4th Cir.2002) ("We must look to substantive state law, however, in determining the nature and scope of a claimed immunity.") (citing *In re City of Philadelphia Litigation,* 49 F.3d 945, 957 (3d Cir.1995)).

 In Virginia, a government agent performing discretionary functions is protected from civil suit by sovereign immunity unless the agent's actions were grossly negligent. *See McLenagan,* 27 F.3d at 1009 n. 10 (citing *Colby v. Boyden,* 241 Va. 125, 128–29, 400 S.E.2d 184 (1991)). Gross negligence is defined as the "absence of slight diligence, or the want of even scant care." *Id.* at 1009 (quoting *Frazier v. City of Norfolk,* 234 Va. 388, 393, 362 S.E.2d 688 (1987)). Put differently, to prove gross negligence, a plaintiff must prove "an utter disregard of prudence amounting to complete neglect of the safety of another." *Id.*

 The evidence presented in the light most favorable to the plaintiff makes clear that there is a genuine issue of fact for trial that Officer Jones was grossly negligent when he threw plaintiff to the ground and arrested him for obstruction of justice. Thus, there is a genuine issue of fact as to whether he is entitled to the protection of sovereign immunity and de-

fendant's motion for summary judgment on this ground must be denied.

Furthermore, Officer Jones argues that he is immune from suit with regard to plaintiff's claim of false arrest under Virginia common law on the ground that he acted in good faith and with probable cause in arresting the plaintiff for obstruction of justice. In *DeChene v. Smallwood,* 226 Va. 475, 479, 311 S.E.2d 749 (1984), the Supreme Court of Virginia made clear that a law enforcement officer may not be held liable for a false arrest if the officer acted " 'in good faith and with probable cause.' " *Id.* (quoting *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). To establish the defense, an officer " 'need not allege and prove probable cause in the constitutional sense.' " *Id.* (citing *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc.,* 456 F.2d 1339, 1347 (2d Cir.1972)). Instead, the officer must allege and prove (i) that he believed in good faith that the arrest was lawful and (ii) that his belief was reasonable. *Id.* As discussed previously, the evidence with regard to whether Officer Jones's belief that plaintiff's arrest was lawful is disputed. Accordingly, summary judgment on plaintiff's false arrest claim under Virginia common law must be denied.

## IV.

Finally, defendants seek summary judgment on plaintiff's claims of (i) conspiracy under § 1983 against Officers Ojeda and Jones and (ii) intentional infliction of emotional distress under Virginia common law against Officer Jones, on the ground that the current factual record warrants judg-

---

23. In the event a federal district court disposes of all federal claims in favor of a defendant, the court must thereafter exercise its discretion in deciding whether to address any remaining pendent state law claims. *See McLenagan v. Karnes,* 27 F.3d 1002, 1009 (4th Cir.1994); *Drake v. Higgins,* 1999 WL 462987

(W.D.Va. June 10, 1999). Here, it is not necessary to reach this issue because plaintiff's federal claims were not disposed of.

In this instance, Officer Jones, and not Officer Ojeda, asserts immunity under state law because plaintiff asserts his pendent state law claims exclusively against Officer Jones.

ment as a matter of law for defendants on these claims.

 Plaintiff's conspiracy claim fails on two distinct grounds. First, plaintiff's claim fails under the intracorporate conspiracy doctrine because Officers Ojeda and Jones are agents of a single entity, namely the Leesburg Police Department, and thus cannot legally conspire with one another. *See Buschi v. Kirven*, 775 F.2d 1240, 1252–53 (4th Cir.1985); *see also Locus v. Fayetteville State University*, 870 F.2d 655 (Table), 1989 WL 21442 (4th Cir. March 8, 1989) (unpublished disposition). While the intracorporate conspiracy doctrine arose in antitrust actions, the Fourth Circuit has consistently applied it in other contexts, including actions brought under §§ 1983 and 1985. *See id.* Moreover, plaintiff has not offered any evidence that the officers' actions come within one of the two exceptions to the doctrine. Specifically, plaintiff has not shown that defendants (i) acted with an independent personal stake or (ii) engaged in unauthorized acts. *See Buschi*, 775 F.2d at 1252–53 (citing *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974) and *Hodgin v. Jefferson*, 447 F.Supp. 804, 807 (D.Md.1978), but noting that the second exception is less well recognized). That Offices Ojeda and Jones were sued in their individual capacities does not compel a different conclusion in this regard. *See Buschi*, 775 F.2d at 1252 ("Nor is the immunity granted under the doctrine to the agents and the corporation destroyed because the agents are sued individually.").

 Second, quite apart from the intracorporate conspiracy doctrine, plaintiff's claim also fails because plaintiff has not offered evidence sufficient to create a genuine issue of fact for trial that Officers Ojeda and Jones acted in concert. To establish a conspiracy under § 1983, plaintiff must show that defendants "acted jointly in concert and that some overt act

was done in furtherance of the conspiracy which resulted in [defendants'] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir.1992)). To survive a motion for summary judgment, plaintiff's evidence must "at least, reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* Plaintiff did not state that the officers communicated in any manner prior to the alleged assault. Nor do Ives, Andre, and Newell offer any evidence of concerted action. Indeed, they all affirm that it was Officer Jones alone who pinned plaintiff's arms and forcefully threw him to the ground.

Plaintiff's state claim of intentional infliction of emotional distress also fails because he has adduced no evidence to meet the standard required to prove this Virginia tort. To recover on his claim, plaintiff must prove that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous or intolerable; the alleged conduct and emotional distress are causally connected; and the distress is severe." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 136, 523 S.E.2d 826 (2000) (citing *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160 (1991)). Significantly, the outrageous conduct required to prove this tort has been described by the Supreme Court of Virginia as conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 241 Va. at 26, 400 S.E.2d 160 (citing *Restatement (Second) of Torts* § 46, cmt. d (1965)).

 To begin with, plaintiff has offered no evidence of the requisite severe emotional distress. Instead, plaintiff testified that he "didn't feel right" after the inci-

dent and that he felt depressed for a couple days, but that these feelings did not interfere with his activities. Plaintiff's father testified that the incident affected plaintiff mentally but did not indicate in what manner. There is no doubt that this kind of emotional distress "is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Dixon v. Denny's, Inc.,* 957 F.Supp. 792, 796 (E.D.Va.1996) (holding that plaintiff's claim of intentional infliction of emotional distress fails because plaintiff "has offered no objectively verifiable evidence—such as medical bills or even the testimony of friends or family—which corroborates her allegations of severe emotional distress") (citing *Russo,* 241 Va. at 27, 400 S.E.2d 160). There is equally no doubt that the officers' conduct, even assuming the truth of plaintiff's allegations, does not meet the rigorous *Russo* standard. *See Russo,* 241 Va. at 26, 400 S.E.2d 160.

### V.

In sum, for the reasons set forth above, defendants' motion for summary judgment of plaintiff's claims under § 1983 on the ground that defendants are entitled to qualified immunity is granted in part and denied in part. It is granted with respect to plaintiff's claim that Officers Ojeda and Jones violated plaintiff's Fourth Amendment rights when they initiated the traffic stop of Ives's vehicle, directed plaintiff to exit the vehicle, and attempted to conduct a pat-down search. It is denied with respect to plaintiff's claim that Officers Ojeda and Jones violated his Fourth Amendment rights when they used excessive force against him and arrested him for obstruction of justice in violation of Va. Code § 18.2–460.[24] To the extent plaintiff

raises claims that Officers Ojeda and Jones violated his rights under the Fifth, Eighth, and Fourteenth Amendments, defendants' motion for summary judgment of these claims must be granted.

Furthermore, defendant Jones's motion for summary judgment of plaintiff's pendent state law claims on the ground that defendant Jones is immune from civil suit under Virginia law is denied. Finally, defendants' motion for summary judgment with regard to plaintiff's claims of (i) conspiracy under § 1983 and (ii) intentional infliction of emotional distress under Virginia common law on the ground that there is no genuine issue of fact for trial is granted.

An appropriate order will issue.

---

**24.** To the extent plaintiff states a claim against Officer Ojeda for excessive use of force, that claim must be dismissed as plaintiff has offered no evidence that Officer Ojeda exerted any force against him.